IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELNORIA HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BALDWIN COUNTY BOARD OF EDUCATION, | ) | |
| EDDIE TYLER, in his Individual and Official | ) | |
| Capacity as Superintendent of the Baldwin County | ) | Case No.: 1:20-cv-00502 |
| Board of Education, JENNIFER SINCLAIR, | ) | |
| in her Individual Capacity and MICHAEL | ) | |
| JOHNSON, ANDREA LINDSEY, TONY MYRICK, | ) | |
| JANAY DAWSON, NORMA LYNCH, CECIL | ) | |
| CHRISTENBERRY, and SHANNON CAULEY | ) | |
| as Board Members of the Baldwin County | ) | |
| Board of Education, in their Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Elnoria Howell, (hereinafter called "Plaintiff"), brings this action against Baldwin County Board of Education, (hereinafter called "BCBE"), a public entity organized and existing in Baldwin County, Alabama, Michael Johnson, Andrea Lindsey, Tony Myrick, Janay Dawson, Norma Lynch, Cecil Christenberry, and Shannon Cauley, Board members for the Baldwin County Board of Education, (hereinafter called "Board Members")(BCBE and Board Members will collectively be referred to as "Board"), Eddie Tyler (hereinafter called "Tyler"), in his individual and official capacity as Superintendent of the Baldwin County Board of Education, and Jennifer Sinclair (hereinafter called "Sinclair"), in her individual capacity only, seeking declaratory and injunctive relief, compensatory damages, and back pay from Defendant arising from Defendants' violation of

1

rights guaranteed to Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq, and the First and Fourteenth Amendment, 42 USC §1983. Plaintiff further states as follows:

## JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343(4), 2201, 2202, 42 U.S.C. Section 2000e et seq, and 42 U.S.C. Section 1983.

2.      Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 42 U.S.C. §2000e-5(f) and (g), 42 U.S.C. §1983 and 42 U.S.C. §1985(3).

## PARTIES

3.      The Plaintiff, Elnoria Howell ("Plaintiff"), an African-American female, is a resident citizen of the United States and resides in Saraland, Mobile County, Alabama. The Plaintiff was employed at all times pertinent to this action by the Defendant, Board.

4.      The Defendant, Baldwin County Board of Education ("BCBE"), is a public entity operating and existing in Baldwin County, Alabama. Defendant is engaged in an industry affecting commerce and is a program receiving state and/or federal financial assistance and is an "employer"within the meaning of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-(h).

5.      Defendants Michael Johnson, Andrea Lindsey, Tony Myrick, JaNay Dawson, Norma Lynch, Cecil Christenberry, and Shannon Cauley are Board Members of the Baldwin County Board of Education, (hereinafter collectively referred to as "Board Members"), and are sued in their official capacities only to enforce equitable and injunctive relief requested herein.

6.      The Defendant, Jennifer Sinclair ("Sinclair"), a white female, is a resident citizen of the United States and resides in Baldwin County, Alabama. At all times relevant to the facts alleged

herein, Sinclair was the Human Resource Director for BCBE. Sinclair is sued in her individual capacity only.

7.      The Defendant, Eddie Tyler ("Tyler"), a white male, is a resident citizen of the United States and resides in Baldwin County, Alabama. At all times relevant to the facts alleged herein, Tyler was the Superintendent of BCBE. Tyler is sued in his individual and official capacities.

## VENUE

8.      Venue is proper in the Southern District of Alabama, Southern Division, since Defendant is conducting business within this District and Division and this action is brought where the unlawful employment practice was committed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 11, 2018.

10.     On August 5, 2020, the EEOC issued a right to sue letter received by Plaintiff's counsel on or about August 9, 2020. (See attached "Exhibit A")

11.     Plaintiff has satisfied all conditions precedent prior to bringing an action under Title VII of the Civil Rights Act of 1964, as amended.

## FACTUAL ALLEGATIONS

12.     At all times relevant hereto, Defendant Tyler was the Superintendent of BCBE and was charged with the responsibility of managing and supervising the employees of BCBE.

13.     At all times relevant hereto, Defendant Sinclair was the Director of Human Resources for Board and was Plaintiff's direct supervisor during her service in the Human Resource Department.

14.     Sinclair, as the Human Resource Director, was responsible for supervising and assisting other management staff with the daily supervision of BCBE employees including, but not limited, enforcing and implementing EEO policies, investigations, training of employees, and discipline.

15.     Sinclair performed essential functions that required her to be familiar with EEO policies and laws that affected employees including, but not limited, to the law that prohibit discrimination on the basis on one's race and retaliation for reporting such unlawful conduct.

16.     Board and Tyler failed to provide adequate and proper supervision of Sinclair in the performance of her duties.

17.     Board and Tyler failed to properly and adequately monitor and enforce BCBE's EEO policies and law as it related to EEO policies and the law.

18.     Defendants Board and Tyler's failure to properly monitor and enforce EEO policies and law related to discrimination created obvious risks that violations of federally protected rights were likely to occur and amounted to deliberate indifference to the Plaintiff's federally protected rights.

19.     Plaintiff was hired by BCBE on or about February 5, 2005, as a Central Office Receptionist. On or about 2009, Plaintiff was promoted to the position of Central Office Clerk and on July 1, 2014, was promoted to the position of Central Office Secretary.

20.     Plaintiff attained tenure in her position of Central Office Secretary at Baldwin County Board of Education.

4

21.     At all times relevant, Plaintiff was classified as a Central Office Secretary and was qualified to perform the assigned duties of the position.

22.     At all times relevant hereto, Plaintiff satisfactorily performed her duties.

23.     Plaintiff trained to perform Human Resource clerical functions and duties and during her assignment to the Human Resource Department relevant herein was primarily responsible for duties related to new employee hires, verification of employment, employee finger printing, supplemental contracts and work agreements, unemployment claims, new hire transcripts for over 47 schools, front desk break/lunch duties, and new hire badges.

24.     Plaintiff is currently classified by Board as a Central Office Secretary, but has been assigned to perform Receptionist duties in the Transportation Department.

25.     Plaintiff historically received excellent evaluations prior to Plaintiff's formal complaint of discrimination on or about July 2018.

26.     On or about May, 2012, Sinclair, Human Resource Director, began to harass Plaintiff, refused to communicate with her, and treated her differently than other Human Resource Clerks in the Office.

27.     Plaintiff was treated differently than non-minority Human Resource Secretaries and employees in the terms and conditions of her employment including, but not limited to, work assignments, pay and promotions, work place scrutiny, evaluations, discipline, and was treated in a hostile manner.

28.     Defendants' selection and promotional policies, practices, and procedures allow its white managers and supervisors to pre-select white employees to be awarded jobs and assignments and to use subjective criteria to select the white individuals that they want to be

awarded certain jobs and positions. These policies, practices, and procedures adversely impacted, and disparately discriminated against the Plaintiff.

29.     Defendants' selection and compensation policies, practices, and procedures discriminated against Plaintiff and other African Americans similarly situated.

30.     Defendants' promotion and selection policies, practices, and procedures form a part of Defendants' overall pattern or practice of holding African-Americans in lower paying positions and compensation levels, as well as other terms and conditions of employment and resulted in disparate impact and treatment of Plaintiff as a result of her race, African American.

31.     On or about April 16, 2018, Sinclair restructured Plaintiff's job duties and responsibilities requiring her to assist the full-time receptionist with her duties when on leave and/or during lunch and/or daily breaks. Similarly situated white employees were not required to assist the receptionist with these additional responsibilities and duties.  Sinclair also required Plaintiff to perform the duties and responsibilities of a File Clerk due to the scheduled maternity leave of Lorin Bryars ("Bryars").

32.     The job duties and responsibilities of a File Clerk had historically been a full time position and, at times, required assistance from a part-time temporary employee.

33.     On April 23, 2018, Plaintiff was reprimanded by Sinclair, Human Resource Director, for failing to perform her assigned duties. Many of the alleged deficiencies were for the alleged non-performance of duties and responsibilities that were outside of Plaintiff's normal job description and assigned responsibility in the Department and/or were not infractions that were not normally addressed. Plaintiff objected to the reprimand and noted her permanently assigned duties related to new employee hires, verification of employment, and extra work contracts and

6

agreements had substantially increased due to the start of a new school term. Plaintiff inquired and requested that Sinclair spread out the duties of the file clerk among all of the Central Office staff members to insure that duties were properly covered and/or provide her help. Sinclair refused to remove any of Plaintiff's newly assigned duties and/or to provide any assistance to her in completing the assigned tasks.

34.     On or about May 15, 2018, Sinclair directed Plaintiff to perform all duties associated with new hire fingerprinting. These duties were previously performed by another employee, Phylis Yelding ("Yelding"). Plaintiff was also assigned to cover the leave and/or breaks of Felicia Lambert ("Lambert"), who was responsible for new hire badges.

35.     Plaintiff remained responsible for New Employee Hire duties which made the task of timely performing the full time duties of a File Clerk difficult. No assistance was provided to Plaintiff when she was absent and/or on leave.

36.     The reduction in staff in the Human Resource Department required Plaintiff to be responsible for substantially more duties and functions in the Department including, but not limited to, filing, receptionist duties, as well as her assigned New Hire duties. No other employees were required to assist in performing some of the required functions and/or to assist Plaintiff in insuring their proper and timely performance.

37.     Plaintiff expressed concerns to Sinclair regarding the new assignments due to the amount of work required to perform the newly assigned duties. Sinclair acknowledged Plaintiff's concerns and advised her to "do the best you can."

38.     Plaintiff was required to perform duties which white employees were historically paid a higher salary and addressed concerns regarding her pay with Sinclair.

39.     Plaintiff applied for several promotions for which she was qualified, which were all denied consideration as a result of her race, African-American.

40.     Similarly situated white employees were awarded raises and awarded promotions which were not provided and/or available to African Americans, including Plaintiff.

41.     Sinclair began to isolate Plaintiff, refused to communicate with her directly, and began to issue verbal reprimands to her on a daily basis regarding alleged deficiencies with her performance.

42.     The harassment and hostility by Sinclair became more severe and pervasive including a substantial increase in Plaintiff's workload, hostility, isolation, lack of support, and lack of assistance in insuring work was performed.

43.     The actions of Sinclair were offensive and created a hostile working environment.

44.     In May, 2018, as Plaintiff's work began to substantially increase due to the start of the new school term related to new hires, verifications, and supplemental employee contracts, several of Plaintiff's co-workers offered to assist Plaintiff with her assigned duties which were customarily assigned to a full time file clerk. Sinclair directed Plaintiff and other employees that they were not to assist Plaintiff with filing and/or any other assigned duties.

45.     The additional work assigned to Plaintiff could not be performed by one person and, in fact, two additional employees were employed upon Plaintiff's transfer out of the Department.

46.     Plaintiff was provided no additional workers or assistance with additional duties assigned including filing, receptionist duties, fingerprinting, and/or with ID cards.  Plaintiff continued to perform her normal assignments and duties related to new hires including, but not

8

limited to, verification of employment, background checks, fingerprints, certification, unemployment claims, and transcript verifications.

47.     Other similarly situated Human Resource clerks, who were white, were provided part time and/or temporary workers to assist with necessary and required duties when the load became unusually heavy including persons who historically had performed the duties of Filing Clerk.

48.     The lack of staffing at the Department was inconsistent with prior practices in the Department and by Sinclair. The staffing deficiencies were immediately rectified when Plaintiff was transferred to the Bus Garage.

49.     Plaintiff was not provided staff typically hired by the Department and was denied requests and attempts to seek assistance from other Human Resource employees and staff members.

50.     Sinclair and Board's refusal and/or failure to properly staff the Human Resource Department resulted in insufficient manpower to properly maintain and manage the department.

51.     All requests by Plaintiff for additional staff to assist with file and/or receptionist functions in the Department were denied and staff members were directed not to assist Plaintiff.

52.     Plaintiff was issued constant verbal reprimands for alleged deficiencies which were the direct result of insufficient and/or ineffective resources and/or staffing while she was assigned to the Human Resource Department.

53.     Plaintiff was informed and aware that similarly situated white employees who previously performed her assigned duties made a higher salary than that paid Plaintiff.  Plaintiff,

also, observed that white employees who performed the same duties were paid higher salaries for the same work and assignments.

54.    Other African American Human Resource Clerks in the Department were not paid the same salary and/or issued raises and pay increases typically provided to white employees in the Department who performed the same duties and assignments.

55.    Upon information and belief, at least 5 white Human Resource Secretaries in the Human Resources Department who performed the same and/or similar work as Plaintiff received a higher salary than Plaintiff.

56.    Plaintiff openly addressed concerns with several co-employees and supervisors, including Sinclair, Superintendent Tyler, Assistant Superintendent Marty McRae ("McRae") and the Board, that Defendants were engaged in employment practices that discriminated against African Americans.

57.    On June 21, 2018, Plaintiff filed a formal complaint directly to Superintendent Tyler regarding her working conditions. During the investigation of Plaintiff's complaints by Assistant Superintendent McRae, Plaintiff advised McRae of concerns of harassment, a hostile work environment and disparate treatment of African Americans by Sinclair including, but not limited to, disparate treatment in pay and promotions.

58.    On June 26, 2018, Plaintiff received her annual evaluation from Sinclair noting deficiencies in her work including, but not limited to, improper attire and failure to properly perform her duties. The low evaluation was unusual during Plaintiff's history of employment with Board.

59.     Plaintiff objected to the negative evaluation she received from Sinclair and to the alleged deficiencies asserted by Sinclair and, again, complained of disparate treatment and discrimination. Plaintiff also raised concerns that Sinclair assigned her work historically assigned to two people.

60.     Sinclair did not provide evaluations in June 2018 to similarly situated Human Resource employees under her direct supervision creating concerns Plaintiff was singled out.

61.     From and since June 2018, Plaintiff complained to Sinclair, Tyler, McRae, and the Board Members regarding the disparate treatment, pay, discrimination and retaliation against Plaintiff.

62.     On July 3, 2018, Plaintiff received a written reprimand from Sinclair regarding alleged deficiencies in the performance of her duties. Sinclair alleged Plaintiff failed to properly record necessary documentation with new hires and human resource functions.  Information omitted by Plaintiff was extraneous information that was easily determined by a review of the entire form.  Plaintiff had completed the form in this manner for over 4 years and had never received a reprimand for such inadvertencies and/or advised that her work was deficient prior to her filing formal complaints of discrimination.

63.     On July 3, 2018, Sinclair informed Plaintiff she would permanently assume the duties of File Clerk. Plaintiff objected to the assignment noting it was the work of two full time positions.

64.     On July 3, 2018,  Plaintiff requested compensation for the additional work and duties assigned by Sinclair in April 2018. Plaintiff performed the assigned duties with little or no management support and/or assistance for approximately 3 months. Plaintiff's request was denied

11

and Sinclair offered to change her duties to the position of Substitute Cards with no additional

pay. Plaintiff rejected the offered job assignment change because it involved no pay increase. The

white employee, Mona Boyington ("Boyington"), who previously performed the duties

associated with substitute cards, was paid a higher rank and step than Plaintiff.

65.     Sinclair denied Plaintiff's request for additional compensation indicating the

duties did not warrant a pay increase.

66.     Plaintiff formally objected to the proposed reprimand and reassignment and

advised Sinclair she believed the adverse actions to be hostile and retaliatory.

67.     On July 14, 2018, Sinclair provided pay increases and/or promotions to Michelle

Lynn Wagonseller, Kristin Peacock, and Cynthia Parker Golden, all white employees. Plaintiff

was not considered for any promotion and/or raise and received no opportunity or notice to apply

for a raise.

68.     On July 17, 2018, Assistant Superintendent McRae served Plaintiff with

Defendants' response to her formal grievance and complaints of discrimination.  Tyler failed

and/or refused to address her complaints of discrimination and retaliation verbally addressed with

Assistant Superintendent McRae during the investigation.  Tyler upheld Sinclair's additional

duty assignments to Plaintiff without reviewing and/or addressing the amount of work required

by the assignment and/or her motivations for the assignment.

69.     The harassment and hostility by Sinclair became more severe and pervasive after

Plaintiff filed her formal complaint of discrimination including a substantial increase in

Plaintiff's workload, hostility, isolation in the workplace, reprimands, poor evaluations, lack of

support, and lack of assistance in insuring extraneous duties assigned were performed.

70.     Defendants Board and Tyler failed and/or refused to stop the harassment and/or take action to stop discrimination in the workplace.

71.     On August 7, 2018, Sinclair notified Plaintiff her Human Resource duties had been removed and that she had been reassigned to the position of Receptionist at the Central Office, a demotion.  The proposed reassignment as a Central Office Receptionist would have resulted in a substantial reduction in responsibility, skill, training and education than duties typically performed by Plaintiff.

72.     Plaintiff attempted to address the requested reassignment of duties with Sinclair and was advised by Sinclair that "[Sinclair] could do what [she] wanted."

73.     Board failed and/or refused to notify Plaintiff of a hearing regarding the proposed demotion and/or to provide her an opportunity to be heard as required by The Students First Act of 2011, Code of Alabama, §16-24(c)-6 and §16-24(c)-8.

74.     On August 8, 2018, Plaintiff received notice from Sinclair that the Board had approved her reassignment of duties from Central Office Secretary, where she performed Human Resource duties, to Central Office Receptionist. Sinclair informed Plaintiff the reassignment had been submitted to and approved by the Board and that there was "not anything [she] can do.

75.     The position of Central Office Receptionist was a demotion and had a lower rank and salary and required substantially less responsibility, skill, education and training.

76.     Plaintiff was denied timely and adequate notice of the scheduled hearing by the Board in violation of state and federal due process rights to which she was entitled.

77.     Plaintiff was denied her right to a meaningful hearing and/or an effective

opportunity to defend allegations asserted against her by either confronting adverse witnesses presented and/or by presenting her own argument and evidence orally.

78.     On August 8, 2018, Plaintiff filed a formal written notice of contest and objections to Tyler and the Board regarding the reassignment of duties to the Central Office Receptionist position and demanded a withdrawal of the termination on the grounds that she was denied notice and a hearing as required by the Students First Act. Plaintiff, again, formally asserted that the reassignment and demotion was retaliatory for her complaints of discrimination against Sinclair.

79.     On August 8, 2018, Sinclair posted and advertised for the position of Human Resource Secretary.

80.     On or about August 10, 2018, Tyler rescinded Plaintiff's reassignment to Central Office Receptionist and served Plaintiff with notice of a mandatory transfer from the Human Resource Department to the Transportation Department Bus Garage as a Central Office Secretary.

81.     Plaintiff was provided no reason for the reassignment to the Transportation Department and was advised by Sinclair that no justification for the transfer was required.

82.     August 10, 2018, Plaintiff again complained of discrimination and asserted the proposed mandatory transfer was retaliation for her complaints of discrimination to Assistant Superintendent McRae in violation of both Title VII and the Students First Act.

83.     Plaintiff requested a hearing on the proposed mandatory transfer pursuant to her rights under the Students First Act. Defendants denied Plaintiff's demand for a hearing asserting

a hearing was not required under Students First Act because Plaintiff was not transferred out of her assigned feeder pattern.

84.     On August 28, 2018, Plaintiff submitted formal objections to the Board asserting the proposed mandatory transfer was discriminatory and retaliatory as a result of her complaints of discrimination on behalf of herself and other similarly situated African Americans and requesting a hearing under the Students First Act.

85.     Upon information and belief, Sinclair, as Human Resource Director, initiated, supervised, and implemented Plaintiff's transfer.

86.     August 28, 2018, the Board approved Sinclair's proposed transfer of Plaintiff to the Transportation Department.

87.     Plaintiff remained classified as a Central Office Secretary after her transfer, but was assigned to perform the duties and functions at the Bus Garage consistent with a receptionist in the classification and salary schedule of Defendant. The duties assigned to Plaintiff in the Bus Garage required substantially less responsibility, skill, education, and training than typically performed by Plaintiff in the Human Resource Department and resulted in a constructive demotion.

88.     Plaintiff was satisfactorily performing her duties in the Human Resource Department prior to her transfer.

89.     Plaintiff's transfer placed her in a false light regarding her employment status and detrimentally affected the terms and conditions of Plaintiff's employment, her relationship co-workers, and her reputation in the community.

90.     Plaintiff was harassed and retaliated against by Sinclair because of her race, African American and because of complaints of discrimination in violation of Title VII.

91.     Plaintiff was retaliated against by Sinclair for filing complaints of discrimination, harassment, and retaliation, including, but not limited to, reprimands, poor evaluations, a transfer of duties, a transfer to another department, isolation, job scrutiny, as well as other hostile and adverse actions directed toward her in violation of federal and state law.

92.     No action was taken by Tyler or the Board to stop the harassment or to create an environment that was not hostile or discriminatory.

93.     The actions of Sinclair were ratified by Tyler and the Board resulting in a hostile and retaliatory working environment in violation of Title VII of the Civil Rights Act of 1964.

94.     The adverse actions taken by Defendants against Plaintiff reasonably deterred Plaintiff and other employees from exercising her First Amendment rights and from engaging in protected conduct.

95.     Plaintiff was retaliated against as a result of her grievances and complaints filed and voiced with Tyler and the Board regarding concerns of a pattern and practice of discriminatory promotions, training, and pay.

96.     Tyler and Board failed and/or refused to investigate Plaintiff's complaints and/or to take any corrective action to prevent the retaliation and/or harassment against Plaintiff.

97.     Defendants failed and/or refused to provide Plaintiff any explanation as to Defendants' failure to address her complaints of discrimination and/or retaliation and/or provide to her reasons for the transfer.

98.     The actions of Defendants affected the terms and conditions of Plaintiff's employment with Board and inhibited her ability to adequately perform her duties and responsibilities as a Human Resource Clerk.

99.     The actions of Board and Sinclair in reassigning Plaintiff were tantamount to a demotion.

100.    After Plaintiff's demotion and reassignment to the Transportation Department, Defendants posted and hired two Central Office employees, both white females, and Plaintiff's duties were divided among three Human Resource employees, Mona Boyington ("Boyington"), Penny Clark ("Clark"), and Cindy Golden ("Golden"), all white employees. In addition, Linda Wimberly ("Wimberly"), a white female, was hired on a part time, temporary basis to assist with file clerk duties.

101.    Defendant Board and its decision makers, including Tyler, knew or should have known of the conduct of Sinclair described herein but failed to take the information seriously and/or provide the Plaintiff an effective remedy to the conduct.

102.    Upon information and belief, Board had ineffective and inadequate policies and procedures for training its employees and managerial employees in a manner as to avoid the type of conduct alleged herein.

103.    After Plaintiff complained about the harassment and retaliation by Sinclair, Tyler and Board retaliated against her in the terms and conditions of her employment including, but not limited to, reassigning her duties, transferring her to another department, disengaging her from input regarding human resources, and alienating her from other employees in the system.

104.    On October 11, 2018, Plaintiff filed a Charge of Discrimination with the EEOC asserting complaints of discrimination and retaliation.

105.    At no time during Plaintiff's employment with Board have Defendants taken effective steps to correct the disparity in pay with regards to Plaintiff's employment nor have Defendants corrected the racially biased and discriminatory atmosphere in which Plaintiff and other similarly situated African Americans have been employed despite Plaintiff's complaints regarding the same.

105.    The Defendant engaged in policies and practices by and through the management of its organization, which evidence a pattern and practice of willful and intentional discrimination against the Plaintiff on the basis of her race and in retaliation of her protected speech.  These policies and practices include but are not limited to the following:

a)    Verbally harassing Plaintiff in an effort to secure her resignation and/or termination.

b)    Assigning Plaintiff other work and duties of a full time employee without assistance and/or proper compensation.

c)    Creating policies whereby employees who voiced concerns regarding discriminatory practices were subjected to greater scrutiny and retaliation.

d)    Creating a hostile working environment by intimidating, threatening, and coercing the Plaintiff on the basis of her race, and protected speech.

e)    Excluding Plaintiff from assistance and support customarily and historically provided to HR employees performing her assigned duties and responsibilities.

18

(f)     Creating policies and practices that discriminate against African Americans in the terms and conditions of their employment including, but not limited to, promotions, discipline, training, job assignment and leave.

106.    Board has used minor rules violations as a pretext for transferring and demoting Plaintiff while not taking any action against white employees for the same or similar conduct.

107.    Plaintiff's exercise of her rights to free speech regarding concerns of racial discrimination in the workplace was a significant motivating factor in Defendants' decision to transfer and reassign Plaintiff's job assignments and duties.

108.    The stated reasons for the reassignment of Plaintiff are activities regularly condoned, encouraged, or overlooked by Board and, therefore, constitutes pretext for demoting and reassigning Plaintiff.

109.    Plaintiff's exercise of her rights to free speech regarding concerns of racial discrimination and retaliation in the workplace was a significant motivating factor in Defendants' decision to demote and/or transfer her.

110.    The Defendants knew or were recklessly indifferent to the fact that their conduct violated established state and/or Federal law.

111.    The conduct alleged herein created an intolerable condition and work environment under which Plaintiff worked or attempted to work.

112.    As a result of the hostile working environment and/or intolerable working conditions in the Human Resource Department, Plaintiff has been unable to return to her position in the Department of Human Resources.

113.   The hostile and discriminatory acts of Sinclair were ratified by Tyler and the Board.

114.   Upon information and belief, other African Americans have been similarly treated and Defendants have engaged in a pattern and practice of discriminating against African Americans in violation of Title VII.

115.   As the direct and proximate result of the wrongful actions of Board, Plaintiff was caused to suffer extreme mental anguish, loss of dignity, frustration, embarrassment, humiliation, anger, and other intangible injuries and other directly and indirectly related expenses.

116.   Plaintiff has been caused to suffer loss of employment, underemployment, and a loss of standing and reputation in the community.

**COUNT I**
**TITILE VII DISPARATE TREATMENT**
**(Board and Tyler in his Official Capacity Only)**

117.   Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

118.    This is a claim to redress unlawful discrimination on the basis of race, African American, in violation of Title VII.

119.   Board has discriminated against Plaintiff on the basis of her race in matters of discipline, subjective decision making, policies, promotions, training, pay and other terms and conditions of employment which have resulted in disparate impact and treatment of Plaintiff.

120.   Board's actions discriminated against the Plaintiff on the basis of her race in violation of the Title VII and the Civil Rights Act of 1991, by instituting and conducting a

systematic pattern and practice of race discrimination in an effort to create a hostile working environment and resulting in Plaintiff's demotion.

121.    The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendants failed to make good faith efforts to comply with the law.

122.    Reasonable public officials knew or should have known that their actions violated clearly established law.

123.    As the direct and proximate result of the Defendants' wrongful actions, the Plaintiff was caused to suffer lost wages, loss of future earning capacity, loss of benefits in general, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These losses are continuing and the Plaintiff will continue to suffer such losses in the future.

124.    The Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce her rights under Title VII and is required to pay reasonable attorneys' fees for the services rendered herein.

## COUNT II
## TITLE VII AND 42 USC §1983
## FAILURE TO PROMOTE

125.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set forth herein.

126.    Plaintiff was denied a promotion because of her race, African-American in violation of Title VII and 42 U.S.C. Section 1983.

21

127.    The substantially motivating factor for Defendants' denial of Plaintiff's promotion request was her race, African American.

128.    The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendant failed to make good faith efforts to comply with the law.

129.    Reasonable public officials knew or should have known that their actions violated clearly established law.

130.    As a result of the Defendants' discriminatory actions, Plaintiff has suffered extreme harm including, but not limited to, mental anguish, emotional distress, emotional suffering, and lost wages.

131.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT III
## HOSTILE WORK ENVIRONMENT

132.    Plaintiffs reaver and reallege the foregoing paragraphs as though fully set out herein.

133.    Plaintiff was subjected to a hostile, offensive, and abusive working environment by her supervisor, Sinclair, as a direct result of race, African American.

134.    Sinclair's conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendant failed to make good faith efforts to comply with the law.

135.    Sinclair, as Human Resource Director, was responsible for monitoring and enforcement of all anti-harassment and discrimination policies of the Board.

136.     The Board's harassment policies failed to provide an effective reporting mechanism to Plaintiff and was ineffective.

137.     The harassment against Plaintiff was pervasive and Defendant Tyler and/or Board knew or should have known of the hostile work environment.

138.     Plaintiff found the harassment to be humiliating, offensive, unfair and in violation of her federally protected rights.

139.     Defendants Board and Superintendent Tyler received reports from Plaintiff regarding the discrimination and retaliation by Sinclair, Director of Human Resources, and failed to take prompt, effective, remedial action upon notice of the same.

140.     Defendants knew or should have known that Sinclair's conduct violated clearly established Federal law.

141.     The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendant failed to make good faith efforts to comply with the law.

142.     Defendant Board and Tyler ratified the hostile and offensive acts and environment of Sinclair.

143.     Plaintiff suffered frustration, anxiety, humiliation and emotional distress and other compensatory damages as a result of the harassment.

144.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT IV**
**TITLE VII AND FIRST AMENDMENT**
**RETALIATION CLAIM**

145.     Plaintiff reavers and realleges the foregoing paragraphs as though fully set out herein.

146.     Plaintiff filed complaints and grievances with the Board regarding concerns of discriminatory practices engaged in by Board and openly opposed the discriminatory actions and treatment by Sinclair, Tyler and the Board.

147.     Plaintiff's actions and conduct in reporting discrimination in the workplace was a matter of public concern.

148.     As a direct result of her complaints and grievances, Board began to harass and threaten Plaintiff, directly and indirectly, in retaliation for her open opposition and expression of concerns regarding possible discriminatory practices by Sinclair and Board.

149.     As a direct result of Plaintiff's complaints, Defendants restructured Plaintiff's job duties and assignments, removed critical assignments, transferred and demoted Plaintiff, reprimanded Plaintiff, issued Plaintiff poor evaluations, scrutinized and isolated Plaintiff from other employees and took other actions which interfered with Plaintiff's ability to perform her duties.

150.     When Plaintiff formally asserted complaints of retaliation for the reassignment and hostility to Tyler and the Board, she was reassigned to the Transportation Department and assigned to perform the duties of a Receptionist and/or Filing Clerk which was a demotion.

151.     The new duties and classification assigned to Plaintiff were tantamount to a demotion requiring less skill, experience, training and education than the Human Resource functions previously performed.

152.    Board retaliated against Plaintiff in violation of Title VII and 42 USC Section 1983 for her exercise of federally protected rights which is prohibited and discriminatory.

153.    Defendants denied Plaintiff her freedom of speech and/or association guaranteed her by the First Amendment to the U.S. Constitution.

154.    Board engaged in a systematic pattern and practice of discrimination in an effort to retaliate against Plaintiff as a result of her protected speech.

155.    As the direct and proximate result of the Board's wrongful actions, the Plaintiff was caused to suffer lost wages, loss of future earning capacity, loss of raises, mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These losses are continuing and the Plaintiff will continue to suffer such losses in the future.

156.    Defendants acted willfully, intentionally and with callous or reckless indifference to Plaintiff's federally protected rights and Defendants failed to make good faith efforts to comply with the law.

157.    Reasonable public officials knew or should have known that Defendants' actions violated clearly established law.

158.    Board and Tyler knew or should have known of the unlawful conduct of Sinclair and failed and/or refused to take appropriate action to stop the retaliatory conduct.

159.    Board and Tyler ratified the unlawful conduct of Sinclair.

160.    Plaintiff has lost wages and income and benefits, suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment and discrimination.

161.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce her rights and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT V
## DEMOTION IN VIOLATION OF TITLE VII
### (Board and Tyler in His Official Capacity Only)

162.    Plaintiff reavers and realleges the foregoing paragraphs as though fully set out herein.

163.    Plaintiff raised issues and concerns regarding concerns of discriminatory practices engaged in by Defendants and openly opposed perceived discriminatory actions by Sinclair and the Board including concerns of retaliation for said conduct.

164.    As a direct result of Plaintiff's complaints, Defendants retaliated against Plaintiff for her open opposition and expression of concerns regarding possible discriminatory practices by Sinclair, Tyler and Board.

165.    As a direct result of Plaintiff's race, African American, and discrimination complaints, Defendants demoted and restructured Plaintiff's job duties and assignments and removed critical assignments to Plaintiff's classifications which required substantially less education, skill and responsibility.

166.    The adverse actions taken by Defendants were hostile and retaliatory and were tantamount to a demotion.

167.    Board retaliated against Plaintiff for her exercise of federally protected rights in violation of the Title VII and the Civil Rights Act of 1991, by instituting and conducting a

systematic pattern and practice of discrimination and retaliation in an effort to create a hostile

working environment and resulting in Plaintiff's demotion.

168.     As the direct and proximate result of the Board's wrongful actions, the Plaintiff

was caused to suffer lost wages, mental anguish, loss of dignity, embarrassment, humiliation, and

other intangible injuries and other directly and indirectly related expenses.  These injuries are

continuing and Plaintiff will continue to suffer such injuries in the future.

169.     The Defendants' conduct was done with reckless indifference to the Plaintiff's

federally protected rights and Defendant failed to make good faith efforts to comply with the law.

170.     Reasonable public officials knew or should have known that their actions violated

clearly established law.

171.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to

enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys'

fees for the services rendered in this cause.

## COUNT VI
## 42 USC SECTION 1983
## EQUAL PROTECTION CLAIM

172.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if

fully set forth herein.

173.     Defendants, Board, Tyler and Sinclair, subjected Plaintiff to different terms and

conditions of employment in violation of the Equal Protection Clause as enforced through 42

U.S.C. Section 1983.

27

174.    In their actions towards Plaintiff as described above, Sinclair and Tyler acted willfully, intentionally and/or with callous and/or reckless indifference to Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment  to the United States Constitution.

175.    As a direct result of the Defendants' treatment and actions, Plaintiff has lost income and benefits, suffered emotional distress and other compensatory losses.

176.    The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendant failed to make good faith efforts to comply with the law.

177.    Plaintiff suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment.

178.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

**COUNT VII**
**§1983 FOURTEENTH AMENDMENT**
**FAILURE TO SUPERVISE AND TRAIN**
**(Board and Tyler in His Individual and Official Capacities)**

179.    Plaintiff reavers and realleges the foregoing paragraphs as if fully set forth herein.

180.    Defendants Board and Tyler were charged with the management and operation of the Baldwin County Board of Education including employees assigned to work in the Human Resource Department and/or Central Office.

181.    Defendants Board and Tyler were responsible for implementing and enforcing EEO policies of the company including, but not limited to, policies related to racial discrimination in the workplace and Title VII.

182.     Defendants Board and Tyler had an affirmative duty to train employees, including appropriate training for Human Resource officers, regarding EEO policies to prevent discrimination and retaliation in the workplace.

183.     Defendants Board and Tyler, as Superintendent, had an affirmative duty to investigate complaints of discrimination and take corrective action to prevent discriminatory conduct in the workplace in accordance with BCBE policies and federal and state laws.

184.     Defendants were aware of a history of wide spread abuse regarding BCBE's policies and procedures relating to discrimination and retaliation for protected activity and the need for training and supervision.

185.     Defendants failed and/or refused to provide adequate training and supervision to its agents, staff, and servants, including Sinclair, in the lawful execution of their duties and this failure to train and supervise became the unconstitutional policy of BCBE.

186.     Defendants Board and Tyler knew and/or should have known of the importance in obtaining and providing training and supervision to it's employees and managers and of the risk associated with its failure to provide it employees and managers with such training.

187.     The Defendants' conduct was done with reckless indifference to the Plaintiff's federally protected rights and Defendant failed to make good faith efforts to comply with state and federal law.

188.     Defendants Board and Tyler failure to properly train and supervise amounted to a deliberate indifference to the Constitutional rights of the Plaintiff.

189.     Defendants acted willfully, intentionally, and/or  with callous or reckless indifference to Plaintiff's rights guaranteed her under the law.

190.     Reasonable public officials knew or should have known that their actions violated clearly established law.

191.     Plaintiff suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment and retaliation.

192.     Plaintiff has suffered loss of income, loss of promotional opportunities, and loss of training as a direct result of Defendants' actions.

193.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce her rights and is required to pay her attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT VIII
## 42 USC §1983 - FOURTEENTH AMENDMENT
## VIOLATIONS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS

194.     Plaintiff reavers and realleges the foregoing paragraphs as though fully set forth herein.

195.   Plaintiff alleges that she has a property right in her position as a Central Office Secretary with Board with full authority, duties, and privileges ascribed thereto.

196.     As a Central Office Secretary, Plaintiff was entitled to procedural due process rights including proper notice and a hearing which were not afforded her denying her of procedural and substantive due process rights as required under Board's policies and procedures and The Student First Act, Code of Alabama, 1975 §16-24C-1, *et seq.*

197.     Plaintiff alleges that Defendants infringed upon Plaintiff's property interest in her position as a Central Office Secretary by enacting a transfer and reassignment of duties without providing her proper notice and/or an opportunity to be heard.

198.    Plaintiff was not provided a hearing or provided any opportunity to redress the adverse actions and/or false light that was placed upon her.

199.    Plaintiff was denied an effective opportunity to be heard and an opportunity to redress the wrongs committed against her.

200.    Defendants had an affirmative duty to provide to Plaintiff notice and an opportunity to be heard under state and federal law.

201.    Defendants' failure and/or refusal to provide Plaintiff proper notice and/or an opportunity to be heard to redress wrongs asserted against her a violation of the Student's First Act and rights guaranteed Plaintiff under the Fourteenth Amendment.

202.    Plaintiff alleges Defendants infringed upon Plaintiff's Fourteenth Amendment Rights in her position as Central Office Secretary by demoting her to the duties of a Receptionist and Transportation Clerk without redress and/or due process of law.

203.    Plaintiff alleges that Defendants infringed upon her Fourteenth Amendment Rights by taking away her position, and most important, her good name and character without due process of law.

204.    Defendants deprived Plaintiff of her procedural and substantive due process rights with malice and intent to harm.

205.    The actions of the Defendants Sinclair and Tyler were motivated by a desire to curtail or to penalize Plaintiffs for her exercise of constitutionally protected rights which violates Plaintiff's procedural and substantive due process rights.

206.    Defendants violated the Students First Act as well as internal policies, procedures, and practices, required of Defendants when demoting Plaintiff by failing to provide notice

regarding allegations motivating the demotion and reassignment of duties and/or providing the Plaintiff an opportunity to respond or redress allegations and/or suspicions asserted against her in violation of federal law.

207.    The customs, practices and policies of Defendants regarding the constructive demotion of Plaintiff and/or her mandatory transfer and reassignment of duties violates the fundamental rights of Plaintiff and those similarly situated employees and is unconstitutional.

208.    Plaintiff's substantive due process rights under the Fourteenth Amendment were violated in that she was retaliated against for exercising her federally protected rights and then lost her position with the Board, which she had a property interest provided by state statute, and lost her liberty interest of privacy and reputation.

209.    Defendants' acts constituted a violation of 42 U.S.C. § 1983.

210.    The actions of Tyler and Sinclair against Plaintiff was willful, intentional and/or with callous and/or reckless indifference to Plaintiff's rights under the law.

211.    Reasonable public officials knew or should have known that their actions violated clearly established law.

212.    As a direct result of the Defendants' treatment and actions, Plaintiff has lost income and benefits, suffered emotional distress and other compensatory losses.

213.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A.      Grant Plaintiff a declaratory judgment that the actions, policies and practices complained of herein of the Defendants violate Plaintiff's federally protected rights as set forth herein.

B.      Grant Plaintiff a preliminary injunction enjoining the defendants, their agents, successors, employees and attorneys and those acting in concert with them and at their direction, from maintaining or continuing the policies, practices, customs and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the Plaintiff's rights as set forth herein.

C.      Grant Plaintiff an order enjoining the defendants, their agents, successors, employees, and attorneys and those acting in concert with them and at their discretion, from engaging in practices that discriminate against Plaintiff and enjoining defendants from failing and refusing to immediately restore Plaintiff's employment status and classification.

D.      Grant Plaintiff an award of back pay from Defendant Board in the amount Plaintiff would have earned but for those policies and practices complained herein.

E.      Grant Plaintiff front pay or wages in the amount equal to the pay or wages she would be earning after final judgment, but for Defendants' unlawful policies and practices complained of herein, and but for the delays Plaintiff will encounter in reaching her rightful place because of business necessity and other equitable considerations.

F.      Award compensatory damages against all defendants in an amount the jury determines will compensate the Plaintiff for her losses and damages and/or nominal damages as may be appropriate.

G.      Award Plaintiff's costs and expenses in prosecuting this action including an award of reasonable attorneys' fees.

H.      Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendants to report such information as is necessary to evaluate their compliance.

I.      Grant Plaintiffs such other and further relief as equity and justice requires.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted this 10th day of December, 2020.

*/s/ Mary E. Pilcher*
**Mary E. Pilcher (PILCM2436)**
**Stein & Pilcher, LLC**
151 North Bancroft Street
P.O. Box 602
Fairhope, AL 36533
251-210-4557
mpilcher@mobilebaylaw.com

34

## CERTIFICATE OF SERVICE

I certify that on this 10th day of December, 2020, I electronically filed the foregoing document using the Court's  CM/ECF system which will send notification of such filing to the following counsel of record:

Sarah D. Young
Stone Crosby, P.C.
8820 Highway 90
Daphne, AL 36526
251-494-2061
syoung@stonecrosby.com

Carl Johnson
Bishop, Colvin, Johnson & Kent, LLC
1910 First Avenue North
Birmingham, AL 35203
205-251-2881
carljohnson@bishopcolvin.com

John W. Marsh
Allison Alford Ingram
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, AL 36102-2148
334-387-2884
jmarsh@ball-ball.com
aingram@ball-ball.com

s/Mary E. Pilcher
**Mary E. Pilcher, Esq.(PILCM2436)**