IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELNORIA HOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 1:20-cv-502-TFM-N |
| ) | |
| BALDWIN COUNTY BOARD OF ) | |
| EDUCATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court are Plaintiff's Motion for Reconsideration (Doc. 186, filed 2/5/24), Defendants Jennifer Tyler and Eddie Sinclair's Motion for Reconsideration, (Doc. 187, filed 2/5/24), and Defendant Baldwin County Board of Education's Motion for Reconsideration (Doc. 178, filed 1/31/24). For the reasons discussed below, it is **ORDERED** that the Defendants' motions for reconsideration are **CONSTRUED** as supplemental motions for summary judgment which are **GRANTED**. Plaintiff's motion (Doc. 186) is **DENIED as moot**.

**I.    BACKGROUND**

The Court laid out an extensive factual and procedural background in its original Memorandum Opinion which need not be repeated here. *See* Doc. 171. Therefore, the Court will merely supplement the matters which arose since that opinion or are of relevance to the current motions. For the purposes of this opinion, the Court will refer to the parties as follows: Plaintiff Elnoria Howell as "Plaintiff" or "Howell"; Defendant Baldwin County Board of Education as "the Board"; Defendant Superintendent of the Board Eddie Tyler as "Superintendent Tyler"; Defendant Human Resources Director Jennifer Sinclair as "Sinclair"; and all the named defendants collectively referenced as "Defendants".

On January 12, 2024, the Court held a telephone conference to inform the parties of its ruling on the summary judgment motions. At the parties' request, the Court subsequently issued a short form summary order and indicated a written opinion would follow detailing the basis for the order. Doc. 162. On January 17, 2024, Plaintiff filed a motion for reconsideration despite the fact the Court had yet to issue its opinion. Docs. 164, 165. The Court denied the motion as premature. Doc. 167. On January 24, 2024, the Court issued its comprehensive Memorandum Opinion and Order granting summary judgment as to most claims but denied summary judgment as to Count I (Disparate Treatment) against the Board pursuant to Title VII and 42 U.S.C. § 1981 and Count VI (Equal Protection) against the Board, Superintendent Tyler, and Sinclair pursuant to 42 U.S.C. § 1983. Doc. 171. The Court also held in abeyance a determination on the issue of qualified immunity as to Superintendent Tyler and Sinclair because the original briefing was insufficient. *Id*. at 31, 46; Doc. 172. The Court ordered supplemental briefing and oral argument on the issue to hear in conjunction with a *Daubert* hearing and made it clear that no final determination had been made on qualified immunity. Doc. 172.

Plaintiff then filed her Motion for Leave of Court to file Interlocutory Appeal (Doc. 176) in which she requested to appeal the dismissal of the claims in the Court's summary judgment opinion. Plaintiff made vague assertions of error and prejudice but did not include a specific basis beyond convenience for a partial appeal. As a result, the Court denied the request noting that (1) the general law that notes partial judgment under Rule 54(b) is unusual and that there was nothing that put this case in that extraordinary category, and (2) the issue of qualified immunity was also pending which could present a separate issue on interlocutory appeal. Doc. 177.

The next day, the Board filed its motion for reconsideration on the summary judgment ruling as to the denial of the two claims. Doc. 178. The Board also requested to continue the trial

setting. Docs. 179, 183.

It was abundantly clear to the Court that the parties felt unprepared to proceed with the February 20, 2024 trial date and because all parties wanted to relitigate matters beyond the qualified immunity issue, the Court issued an order setting briefing on any motions for reconsideration to be filed on a timeline where they would be fully submitted by the preestablished February 9, 2024 hearing and indicated it would take up the request for a continuance at that time. *See* Doc. 180.

On February 2, 2024, the individual defendants filed their supplemental brief on qualified immunity. Doc. 185. On February 5, 2024, the individual defendants filed a motion for reconsideration asserting additional reasons beyond qualified immunity on why the remaining claims against them should be dismissed and the Board submitted a supplemental brief to support its previously filed motion for reconsideration. *See* Docs. 187, 188. Plaintiff filed a motion for reconsideration on her request to have an interlocutory appeal on the previously dismissed claims. *See* Doc. 186. On February 7-8, 2024, Plaintiff filed responses in opposition to the qualified immunity brief and the motions for reconsideration. *See* Docs. 192, 193, 194.

On February 9, 2024, the Court held an omnibus hearing on all the reconsideration requests, qualified immunity, and the *Daubert* motions. The Court orally denied both Daubert motions indicating that the issues raised went to weight as opposed to admissibility. *See* Docs. 195, 196. The Court also reset the trial to its next civil trial term in June 2024.

The remaining matters were taken under advisement. This opinion addresses those issues.

## II.   STANDARD OF REVIEW

**A.   Motion for Reconsideration**

Federal Rule of Civil Procedure 54(b) governs motions for reconsideration and provides

that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).

A motion for reconsideration may not be used to supplement existing arguments, inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Further, reconsideration cannot "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007) (internal quotes omitted). The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (en banc).

Although Rule 54(b) does not explain what factors a court may consider when deciding a motion to reconsider brought pursuant to this rule, "the Eleventh Circuit has opined that Rule 54(b) is similar to Rule 60(b), and that the factors provided in Rule 60(b) may be applied to a Rule 54(b) motion to reconsider." *Berisha v. Stan, Inc.*, 461 F. Supp. 3d 1257, 1259 (S.D. Fla. 2020) (citing *Herman v. Hartford Life & Accident Ins. Co.*, 508 F. App'x 923, 927 n.1 (11th Cir. 2013)); *see also Maldonado v. Snead*, 168 F. App'x 373, 386-87 (11th Cir. 2006) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)) ("Although the district court reviewed Maldonado's motion under Rule 54(b) as a motion for reconsideration of a non-final order rather than under Rule 60(b) as a motion for relief from

judgment, '[w]e see no reason to apply a different standard when the party seeks reconsideration of a non-final order' than when the party seeks reconsideration of a final judgment.") (alteration in original).

Rule 60(b) provides a party, on motion, relief from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or,
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(1)-(6).

**B.    Summary Judgment**

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[2]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter,"

but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid

summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

### III. DISCUSSION AND ANALYSIS

Generally, a motion for reconsideration may not be used to supplement or inject new arguments that were previously available but not properly presented on the underlying motion. *See Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Further, the Court held the qualified immunity question in abeyance pending additional briefing. So regardless, the Court

has legal matters to resolve prior to the case presentation to a jury. Further, Plaintiff indicated her own desire to pursue a partial appeal on the previously dismissed matters before proceeding to a jury trial. Finally, at least one of the questions presented – statute of limitations – is a question of law for the Court to decide. The Court is loath to waste a jury's time when there are legal matters to determine. Therefore, the Court determined it more appropriate to resolve <u>all</u> pending matters prior to proceeding with the presentation of the case to a jury.

As such, despite the motions being styled as motion for reconsideration, pursuant to the interest of justice, the Court will exercise its discretion to address them as supplemental motions for summary judgment and apply that standard of review.

**A.     Count VI - Statute of Limitations on § 1983 equal protection claim**

In Alabama, a plaintiff who files a claim under 42 U.S.C. § 1983 is subject to a two-year statute of limitations. Ala. Code § 6-2-38(l); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). In general, "the statute of limitations begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996)). Once the statute of limitations has expired, the action is barred, regardless of the merits of the case. *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). When the statute of limitations starts to run is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007)

Finally, "not all injuries are equal. Sometimes, there is one discrete point at which the injury occurs. Other times, however, the injury happens over and over again. When the injury occurs determines when the statute of limitations starts running." *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1338 (M.D. Ala. 2019). Therefore, the Court must determine whether Plaintiff is

suffering from "the present consequence of a one time violation, which does not extend the limitations period, [or] the continuation of that violation into the present, which does." *City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002) (quoting *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000)).

In the present claim, Plaintiff filed her original complaint on October 13, 2020 alleging a violation of her constitutional equal protection rights under based on disparate treatment pursuant to 42 U.S.C. § 1983. *See* Doc. 1 (Count VI). Thus, this Court may only consider factual claims arising after October 14, 2018. In her amended petition, Plaintiff alleges that her disparate treatment began on April 16, 2018, when Sinclair restructured Plaintiff's job duties, "requiring her to assist the full-time receptionist with her duties when on leave and/or during lunch and/or daily breaks," and cover the duties of the file clerk during a scheduled maternity leave, while similarly situated white employees were not required to assist with these additional responsibilities and duties. Doc. 48 at ¶ 31. This treatment continued into May of 2018, when Plaintiff states she was asked to resume previously held duties such as new hire fingerprinting and badges with no assistance due a reduction in staff in the department, and no other employees were asked to perform these additional duties or assist Plaintiff. *Id.* at ¶¶ 34-36.

Further, in opposition to summary judgment, Plaintiff argued that Sinclair treated Caucasian employees differently than African Americans in the terms and conditions of their employment including evaluations, discipline, training, promotions and pay with actions, such as (1) frequently scrutinizing the work of Howell and other African Americans and singling them out for clerical errors not addressed with Non-African American employees, (2) counseling Howell and other African Americans for socializing during work hours and breaks creating isolation at work while allowing Caucasian employees to take breaks together and socialize during work

without issue, (3) assigning African Americans with heavy, out of class workload duties, without a salary adjustment while giving raises and promotions to similarly situated Caucasian employees who were not assigned additional duties. *See* Doc. 136 at 5-6.  More specifically, Plaintiff alleges she was denied the training and support her similarly situated Caucasian counterparts were provided and was excluded from meeting and emails with pertinent information while simultaneously being penalized for lacking the information. *Id.* at 6. All these allegations took place between April 2018 and August 28, 2018, when Howell's transfer to the Transportation Department was approved by the Board. Finally, when asked at oral arguments on February 9, 2024, to specifically articulate the factual events that took place after October 2018, Plaintiff's counsel responded with factual allegations from April to August 2018. Put simply, at no point did Plaintiff allege any facts that occurred during or after October 2018.

Plaintiff argues "the Court's examination and review of adverse actions should not be viewed in isolation." Doc. 186 at 7. However, even taking a broad and collective view of the allegations in which Plaintiff claims resulted in disparate treatment, this Court cannot ignore that there is a not a single factual allegation of disparate treatment, retaliation, adverse action, or otherwise that took place after October 14, 2018.

The Court finds that it would be an unnecessary waste of time and resources in sending this matter to the jury when the Court would clearly be required to render judgment as a matter of law on this question.  Thus, even when considering the facts most favorably to the Plaintiff, summary judgement is due on Count VI as to all defendants because the claims are time barred.

Count VI was the only claim remaining against the individual defendants (Superintendent Tyler and Sinclair).  Because the Court already determined the claim is barred substantively on the merits by the statute of limitations, it need not determine the issue of qualified immunity.

**B. Count I - Disparate Treatment under Title VII and § 1981**

In its supplemental briefing, the Board specifically argues that Plaintiff did not satisfy the evidentiary burden of her disparate treatment claim because her summary judgment opposition fails at 'identifying and proving the identities of her comparator(s) or how their employment circumstances rendered them similarly situated to her in all material respects." Doc. 188 at 3. Further, the Board cites more recent jurisprudence, decided after the original briefing in this matter, *Anthony v. Georgia,* 69 F.4th 796, 805 (11th Cir. 2023), which affirmed granting of summary judgment and found that a Plaintiff failed to establish a prima facie case of race discrimination where the Plaintiff fails to proffer any evidence of a similarly situated employee outside the Plaintiff's protected class. This point was reinforced in oral arguments at the hearing.

"Title VII and 42 U.S.C. § 1981 have the same requirements of proof and use the same analytical framework." *Chapter 7 Tr. V. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256-57 (11th Cir. 2012). Under Title VII, a plaintiff may show discrimination through circumstantial evidence by satisfying the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1971); *Anthony*, 59 F.4th at 805 (citations omitted). This starts with establishing the prima facie case. A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Therefore, among other things, Plaintiff must show that the Board treated similarly situated employees outside her protected class more favorably. The Board argues that although Sinclair allocated and occasionally reallocated specific tasks to Plaintiff, she did so for all employees in the department as part of an ongoing response to meet then-current needs and achieve operational

efficiency. Further, the Board noted: (1) Howell received all pay raises and benefits that were awarded to other similarly situated employees (2) she was promoted over Caucasian applicants, (3) her workload was temporarily reduced or reassigned to accommodate exigent personal circumstances, and (4) it was only after Plaintiff rejected several alternative assignments (within her current job classification) that she was reassigned to a vacant receptionist position within the department which would not have entailed any loss of current or future compensation. Importantly, when asked to <u>specifically</u> identify the race of similarly situated employees, Plaintiff's counsel acknowledged that there were at least two Caucasian employees similarly situated to Plaintiff, Gail King and Cindy Golden, were also denied additional pay compensation they requested despite their beliefs that they were performing additional duties.

The Court finds that it is undisputed that Howell satisfies two elements of her prima facie case – she belongs to a protected class, and she was qualified for her job. Thus, the two elements in question are (1) whether she was subjected to adverse employment action and (2) whether her employer treated similarly situated employees outside her class more favorably. Although the Court is not entirely convinced Plaintiff suffered an adverse employment action, accepting for argument's sake Plaintiff's assertion that a totality of the circumstances in the case gave rise to a materially adverse change in employment duties, this factor does not alter the overall outcome of the case.

The crux of a disparate treatment claim is that Plaintiff is treated differently, and race is the basis of this treatment. Plaintiff's claim fails a matter of law because she offers no comparator evidence sufficient to satisfy this Circuit's legal standard for comparators as described in *Lewis v. City of Union City, Ga.,* 918 F.3d 1213 (11th Cir. 2019) (en banc) and more recent *Anthony v. Georgia*, 69 F.4th 796 (11th Cir. 2023). In *Lewis,* the court held "a plaintiff must show that [he]

and [his] comparators are 'similarly situated in all material respects.'" *Id.* at 1224; *see also Anthony*, 69 F.4th at 805 ("[A] plaintiff and his comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.") (internal modifications and quotations omitted). Here, Plaintiff provides no comparator that was treated more favorably than Plaintiff. As Plaintiff's counsel acknowledged in oral arguments, Caucasian employees Cynthia Golden and Gayle King both filed formal grievances against Sinclair regarding their work assignments and pay – the exact same things that Howell complained about, and like Howell, their grievances were denied.

In opposition to summary judgment, Plaintiff argued that Sinclair treated Caucasian employees differently than African Americans in the terms and conditions of their employment including evaluations, discipline, training, promotions and pay with actions, such as (1) frequently scrutinizing the work of Howell and other African Americans and singling them out for clerical errors not addressed with Non-African American employees, (2) counseling Howell and other African Americans for socializing during work hours and breaks creating isolation at work while allowing Caucasian employees to take breaks together and socialize during work without issue, (3) assigning African Americans with heavy, out of class workload duties, without a salary adjustment while giving raises and promotions to similarly situated Caucasian employees who were not assigned additional duties. *See* Doc. 136 at 5-6. More specifically, Plaintiff alleges she was denied the training and support her similarly situated Caucasian counterparts were provided and was excluded from meeting and emails with pertinent information while simultaneously being penalized for lacking the information. *Id.* at 6. However, those references are generic and do not specifically argue how these counterparts are similarly situated. Plaintiff finally discusses Mona Boyington, Amber McGruff, Lorin Bryars, and Cynthia Golden, but fails to ultimately establish

them as valid comparators.

The Board offered evidence of nondiscriminatory reasons, such as educational background, as was the case of Caucasian employee Brittany Morgan, who had a bachelor's degree unlike Plaintiff, which made some employees not similarly situated as Plaintiff as the basis for alleged pay disparities. Similarly, the Board offered evidence of Sinclair, terminating a Caucasian employee, Lorin Bryars, for work deficiencies to counter Plaintiff's claims that only African American employees were scrutinized for their work.

Essentially, Plaintiff argues in vague generalities about similarly situated white employees but fails to offer any specifics as to the individuals outside the protected class to show that they were similarly situated in all material respects and/or treated more favorably. Therefore, Plaintiff fails to meet her prima facie case as to disparate treatment and summary judgment is appropriate as to Count I.

**C.     Plaintiff's motion for reconsideration for leave to proceed with a partial appeal**

Notably, Plaintiff did not technically file a motion for reconsideration – after the Court's issuance of its comprehensive opinion – of the actual summary judgment opinion itself. Instead, Plaintiff filed a motion to reconsider the denial of leave to file a permissive interlocutory appeal. *See* Doc. 186. Regardless, the Court still reviewed the arguments submitted to see if any reconsideration was warranted on the prior dismissed claims. The Court found no reason under Rule 54 to reconsider its prior rulings.

Therefore, to the extent Plaintiff seeks to have an interlocutory appeal on the previously dismissed matters, that situation has now been rendered moot by grant of summary judgment to the defendants as to the remaining claims. A partial appeal is no longer necessary as the Court will render a final judgment as to <u>all</u> claims pursuant to Fed. R. Civ. P. 58.

## IV. CONCLUSION

Based on the above, it is **ORDERED** that the Defendants' supplemental motions for summary judgment (Docs. 178, 187, 188) are **GRANTED**. Summary judgment is now granted on Counts I and VI. The issue of qualified immunity is rendered moot by the substantive rulings. Further, Plaintiff's motion for reconsideration on the denial of a permissive interlocutory appeal (Doc. 186) is **DENIED as moot**.

Finally, as a result of this ruling, any upcoming court appearances are **CANCELLED** and the motions in limine (Docs. 189, 190, 191) are **DENIED as moot**.

A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 20th day of March 2024.

                                           s/Terry F. Moorer
                                           TERRY F. MOORER
                                           UNITED STATES DISTRICT JUDGE